IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA A. LYONS,            )
                           )
            Plaintiff,     )
                           )
     v.                    )  Civil Action No. 05-104
                           )
JO ANNE B. BARNHART,       )
COMMISSIONER OF            )
SOCIAL SECURITY,           )
                           )
            Defendant.     )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 27th day of March, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her pending applications for disability insurance benefits and supplemental security income on April 8, 2003, alleging a disability onset date of November 9, 2002, due to panic disorder, hearing problems, stenosis of the lower spine, arthritis, carpal tunnel syndrome, shortness of breath, pain and a cardiac impairment. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on June 14, 2004, at which plaintiff, represented by counsel, appeared and testified. On September 22, 2004, the ALJ issued a decision finding that plaintiff is not disabled. On December 1, 2004, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 50 years old at the time of the ALJ's decision and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §§404.1563(d) and 416.963(d). Plaintiff has a high school education and past relevant work experience as a nursing assistant. For purposes of plaintiff's application for Title II benefits, plaintiff met the disability insured status requirements of the Act on her alleged onset date and had acquired sufficient quarters of coverage to remain insured through December 31, 2007.

After reviewing plaintiff's medical records and hearing testimony from plaintiff, plaintiff's daughter and a friend, as well as a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of degenerative disc disease of the lumber spine, degenerative joint disease of the left knee, chronic obstructive pulmonary disease, coronary artery disease, obesity, major depressive disorder and a panic disorder[1], those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ further found that plaintiff retains the residual functional capacity to perform a significant range of light work but with certain restrictions recognizing the limiting effects of her impairments. Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff could perform based upon her age, education, work experience and residual functional capacity. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled under the Act.

---

[1] The ALJ found that plaintiff's carpal tunnel syndrome and hearing loss are not severe impairments as defined in the regulations.

- 3 -

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20

C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46.

Additionally, the Commissioner has promulgated regulations dealing specifically with the evaluation of mental impairments. 20 C.F.R. §§404.1520a and 416.920a. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432.

Here, plaintiff raises a plethora of challenges to the ALJ's findings. Specifically, plaintiff contends that: (1) the ALJ erred in concluding that plaintiff's carpal tunnel syndrome is not a severe impairment; (2) the ALJ failed to consider plaintiff's carpal tunnel syndrome in assessing her residual functional capacity; (3) the ALJ erred in assessing plaintiff's credibility by misrepresenting her treatment history and other medical evidence; (4) the ALJ improperly discounted plaintiff's GAF scores in assessing her mental residual functional capacity; (5) the ALJ erroneously relied on the vocational expert's testimony in light of a purported conflict between that testimony and the Dictionary of Occupational Titles ("DOT"); and, (6) the ALJ erred in rejecting a hypothetical to the vocational expert posited by plaintiff's counsel which more accurately set forth plaintiff's specific work related limitations. Upon review, the court finds that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

- 5 -

Plaintiff first challenges the ALJ's step 2 finding that plaintiff's carpal tunnel syndrome is not a severe impairment. At step two, the ALJ must determine whether a claimant's impairment is severe as defined by the Act.  20 C.F.R. §§404.1520 and 416.920.  "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1521(a) and 416.920(a). The step two inquiry is a de minimus screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546.

Although "[r]easonable doubts on severity are to be resolved in favor of the claimant," Newell, 347 F.3d at 547, there appears to be no doubt in this case that plaintiff's carpal tunnel syndrome does not significantly limit plaintiff's ability to do basic work activities and, therefore, is an impairment which the ALJ properly determined to be non-severe. Dr. Michael Sauter, a neurologic specialist, expressly noted in his report that he does not believe that "the mild carpal tunnel syndrome noted on the electrodiagnostic assessment is contributing to her symptoms." (R. 195).

In addition, in evaluating plaintiff's carpal tunnel syndrome, the ALJ noted that plaintiff's physical examinations revealed intact sensation and muscle strength with no atrophy and that the evidence does not indicate that plaintiff experiences any problems with fine or dexterous movement. (R. 18). In fact,

plaintiff indicated in a questionnaire that she is able to dial a phone, use a remote control, use a knife and fork, fasten buttons and snaps on clothes and tie her shoes. (R. 101). The ALJ adequately explained his step 2 rationale in his decision and his finding that plaintiff's carpal tunnel syndrome is not severe is supported by substantial evidence. (R. 18).

It is also important to note that, although the ALJ found that plaintiff's carpal tunnel syndrome is not severe, he also found that plaintiff suffers from numerous other severe impairments and did not deny her claim for benefits at step 2. Instead, he considered the impact of all of plaintiff's medically determinable impairments on plaintiff's residual functional capacity and found that plaintiff nevertheless retains the ability to perform other jobs existing in significant numbers in the national economy at step 5. The court is satisfied that not only is the ALJ's step 2 analysis supported by substantial evidence, but also that the ALJ's finding that plaintiff's carpal tunnel syndrome is not a severe impairment had no effect on the ultimate determination of non-disability. Cf., McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-61 (3rd Cir. 2004) (the Commissioner's determination to deny an applicant's request for benefits at step 2 "should be reviewed with close scrutiny" because step 2 "is to be rarely utilized as a basis for the denial of benefits".)

The court also finds unpersuasive plaintiff's related argument that the ALJ failed to consider plaintiff's carpal tunnel

syndrome in combination with plaintiff's severe impairments in assessing her residual functional capacity. In support of this argument, plaintiff refers to a statement made by Dr. Scherer indicating his opinion that plaintiff could not return to her prior employment as a nursing assistant. (R. 230).[2]

However, there is no indication in that treatment note that plaintiff cannot return to her prior employment because of carpal tunnel syndrome. In fact, Dr. Scherer never mentions carpal tunnel syndrome in that note and only writes generally of plaintiff's neuropathic right arm pain. In any event, the ALJ nevertheless agreed with Dr. Scherer's conclusion that plaintiff could not return to her prior employment by finding at step 4 that plaintiff is unable to perform her past relevant work.

Upon review of the record, the court is satisfied that the ALJ considered all of plaintiff's medically determinable impairments, both severe and non-severe, in combination in assessing plaintiff's residual functional capacity, and that the limitations set forth in his residual functional capacity finding are those that are supported by the evidence as a whole. 20 C.F.R. §§404.1545(a)(2) and 416.945(a)(2).

Plaintiff's remaining arguments challenge the ALJ's finding of non-disability at step 5 of the sequential evaluation process.[3]

---

[2] Both parties mistakenly refer to this statement as coming from Dr. Sauter when in fact it is contained in the treatment notes of Dr. Scherer. (R. 219-272).

[3] At step 5, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the

She first argues that the ALJ erred in assessing plaintiff's credibility. Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §§404.1529(c) and 416.929(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999).

In this case, the ALJ found that plaintiff's "statements regarding her impairments and their impact on her ability to work are not consistent with the clinical and objective findings, her medical history, her self-reported activities of daily living, and the other evidence in the record." (R. 27). In making this finding the ALJ adhered to the standards set forth in 20 C.F.R. §§404.1529(c) and 416.929(c) and SSR 96-7p and adequately explained the basis for his credibility determination in his decision. (R. 22-24). As required, the ALJ considered plaintiff's testimony in light of not only the medical evidence but also the other relevant factors, such as plaintiff's daily activities and treatment history, and determined that plaintiff's testimony was not totally credible.

Plaintiff raises two specific challenges to the ALJ's credibility determination. First, she takes issue with the ALJ's

---

claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(f) and 416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his or her impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli, 247 F.3d at 40.

conclusion that plaintiff's "history of treatment is inconsistent with an individual experiencing totally debilitating symptomatology". (R. 24). In making this determination, the ALJ noted that "the evidence does not reveal [that] the claimant has ever been hospitalized for a mental health impairment, attended or been referred to a partial hospitalization program, or received any frequent outpatient mental health counseling." (R. 24).

Plaintiff contends that the ALJ ignored medical evidence in the record relating to plaintiff's treatment history for her mental impairments, particularly evidence that plaintiff is attending counseling "on a bi-monthly to tri-monthly basis", and that the ALJ inferred non-disablity from the frequency and mode of treatment. The court is unpersuaded. The record establishes that the ALJ did not infer non-disability from the frequency and mode of plaintiff's treatment, but, rather, that he considered, inter alia, that plaintiff had never been hospitalized for a mental health impairment along with plaintiff's recent history of infrequent counseling, which he noted as once a month as plaintiff testified at the hearing, as a factor in assessing plaintiff's credibility, along with all the other appropriate factors under §§404.1529(c) and 416.929(c) and SSR 96-7p.

Likewise, contrary to plaintiff's assertion, the record shows that the ALJ did not improperly discount an MRI from September 17, 2003, which plaintiff contends constitutes objective evidence supporting her claims of debilitating pain. To the contrary, the ALJ expressly referred to that particular MRI in his decision

- 10 -

and noted that it revealed mild spondylotic changes at the L4-5 and L5-S1 levels without any central canal stenosis. (R. 19).

However, under SSR 96-7p, the existence of a medically determinable impairment, as demonstrated by an objective medical test, that reasonably could be expected to produce the symptoms alleged is only the beginning of the inquiry, not the end. Rather, once the impairment is established, the ALJ must evaluate the intensity, persistence and functionally limiting effects of those symptoms to determine the extent to which those symptoms affect the claimant's ability to do basic work activities. The ALJ followed the dictates of SSR 96-7p in this case and determined that plaintiff's statements regarding her limitations were not entirely credible. As noted above, the ALJ's credibility finding is supported by substantial evidence.

Plaintiff's next argument is that the ALJ improperly evaluated the medical evidence in assessing plaintiff's mental residual functional capacity. Specifically, plaintiff contends that the ALJ improperly ignored plaintiff's consistent GAF scores in the range of 35-50 over the course of the year 2003, which, when viewed in a longitudinal manner, verify plaintiff's significant mental health problems. However, upon review the court is satisfied that the ALJ's evaluation of this evidence also is supported by substantial evidence.

The use of the GAF scale, which considers psychological, social and occupational functioning on a hypothetical continuum of

AO 72A
(Rev.8/82)

mental health,[4] is not endorsed by the Social Security Administration because its scores do not have a direct correlation to the disability requirements and standards of the Act. See 65 Fed.Reg. 50746, 50764-65 (2000). Instead, the ALJ is to consider the clinical findings contained in the narrative reports of medical sources, and is to weigh that evidence under the standards set forth in the regulations for evaluating medical opinion evidence, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(d) and 416.927(d).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence to assess plaintiff's mental residual functional capacity. (R. 19-22). The ALJ expressly addressed plaintiff's GAF scores in his decision and noted that plaintiff's subsequent progress notes and reports do not contain any references to significant mental health impairments and that an October 2003 psychological evaluation was within normal limits. (R. 25). Accordingly, based upon his review of the entire record, including plaintiff's medical records and plaintiff's own testimony and reported daily activities, the ALJ concluded that plaintiff's mental impairments, while severe, do not preclude her from performing any substantial gainful activity. Rather, plaintiff retains the mental residual functional capacity to perform jobs in which she can avoid interaction with the public

---

[4]. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994).

and more than occasional interaction with her co-workers. The ALJ's findings in this regard are supported by substantial evidence as outlined by the ALJ in his decision.

Plaintiff's final two arguments relate to the ALJ's reliance on the testimony of the vocational expert in finding that a significant number of jobs exist in the national economy which plaintiff can perform. The court has considered these arguments and finds them to be unavailing.

First, plaintiff contends that the skill requirements of the jobs that the vocational expert identified at the light exertional level as jobs that plaintiff retains the ability to perform are inconsistent with the ALJ's finding that plaintiff is limited to unskilled work.[5] Specifically, plaintiff argues that the jobs which the vocational expert identified, and which the ALJ found plaintiff could perform, all are identified in the DOT as having Specific Vocational Preparation ("SVP")[6] Ratings beyond the capacity of an individual limited to unskilled work. Because of this alleged inconsistency between the vocational expert's testimony and the DOT, plaintiff argues the ALJ erred in relying on that testimony.

---

[5] The ALJ found that "plaintiff has semiskilled work experience but has not acquired any skills transferable to work with the above-stated residual functional capacity." (R. 28).

[6] The DOT defines SPV as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C (4th Ed., Rev. 1991)

- 13 -

Pursuant to the regulations, unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§404.1568(a) and 416.968(a). In addition, "little specific vocational preparation and judgment are needed" and "a person can usually learn to do the job in 30 days." Id. Using the skill level definitions set forth in §§ 404.1568 and 416.968, Social Security Ruling 00-4p provides that "unskilled work corresponds to an SVP of 1-2; semiskilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."

In this case, plaintiff is correct that several of the jobs cited by the vocational expert in fact do carry SVP levels beyond plaintiff's capacity for unskilled work. As listed in the DOT, order filler positions carry an SVP level of 3 (see, e.g., DOT 49.362-026 and 222.487-014); stock clerks an SVP of 4 (DOT 22.387-058); and, receiving clerks an SVP of 5 (DOT 222.387-050). Pursuant to SSR 00-4p, the regulatory definitions of skill levels are controlling, and vocational expert "evidence may not be relied upon to establish that unskilled work involves complex duties that take many months to learn, because that is inconsistent with the regulatory definition of unskilled work."

Thus, if the foregoing were the only occupations that the vocational expert identified, then plaintiff's argument that the ALJ erred in relying on the vocational expert's testimony in finding that there are jobs existing in significant numbers in the national economy that plaintiff can perform might have had merit.

AO 72A
(Rev.8/82)

However, the vocational expert also identified numerous other jobs at the light exertional level which do comport with plaintiff's capacity for unskilled work. For instance, the vocational expert identified the position of mail sorter, which is classified in the DOT as light work with an SVP level of 2 (DOT 209.687-026). In addition, the vocational expert testified at the hearing that an individual of plaintiff's age, education, work experience and residual functional capacity could perform the additional positions of sorter and collator, both of which are classified in the DOT as light work with SVP levels of 2. (DOT 29.687-186 and 53.687.010). (R. 586).

Because the vocational expert was able to identify numerous unskilled, light exertional level jobs existing in significant numbers in the national economy that plaintiff can perform, the court finds that the ALJ did not err in relying on the vocational expert's testimony to find that plaintiff is not disabled at step 5, despite the fact that the vocational expert also identified some jobs that require skills beyond plaintiff's capacity for unskilled work as defined in the DOT. See, e.g., Rutherford v. Barnhart, 399 F.3d 546, 558 (3d. Cir. 2005)(vocational testimony provided substantial evidence for ALJ's step 5 finding despite minor inconsistencies between that testimony and DOT); Jones v. Barnhart, 364 F.3d 501, 506 (3rd Cir. 2004) (substantial evidence supported step 5 determination despite inconsistencies between vocational expert testimony and DOT where inconsistencies did not exist as to all of the jobs identified by the vocational expert

and the vocational expert testified that listed jobs were just examples, not an exhaustive list). The court is satisfied in this case that the vocational expert's testimony constituted substantial evidence to support the ALJ's step 5 finding that jobs exist in significant numbers in the national economy that plaintiff can perform despite any minor inconsistencies between the vocational expert's testimony and the DOT.

The court likewise finds no merit to plaintiff's contention that the ALJ erred in not accepting the vocational expert's response to a hypothetical posited by plaintiff's attorney which incorporated additional limitations relating to rest periods and absences. The vocational expert testified that an individual who could not complete a full workday or work week, or who required extra rest periods or absences, would be precluded from performing all of the jobs the vocational expert had identified. (R. 586).

As already discussed, the limitations stated in the ALJ's residual functional capacity finding, which he incorporated into his hypothetical to the vocational expert, are all of the limitations that are supported by the evidence of record. The additional limitations suggested by plaintiff's counsel in his hypothetical to the vocational expert are not medically supportable and are contradicted by plaintiff's testimony as to her daily activities. As a hypothetical to the vocational expert must reflect all of the claimant's impairments and limitations supported by the record, Podedworny v. Harris, 745 F.2d 210 (3d

Cir. 1984), the ALJ did not err in rejecting a response to a hypothetical incorporating limitations that are not supported by the medical evidence. See <u>Jones v. Barnhart</u>, 364 F.3d 501, 506 (3d Cir. 2004) (ALJ had authority to disregard a vocational expert's response to a hypothetical inconsistent with evidence).

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: A. Tereasa Rerko, Esq.
    Quatrini Rafferty Galloway
    Underwood Center
    550 East Pittsburgh Street
    Greensburg, PA 15601

    Lee J. Karl
    Assistant U.S. Attorney
    U.S. Post Office & Courthouse
    700 Grant Street, Suite 400
    Pittsburgh, PA 15219